LLC. Ms. McIntyre? Good morning, Your Honors. May it please the Court, Lon McIntyre, appearing on behalf of the defendant's Wedgwood Nursing Home in this case. And with the Court's permission, I'd like to reserve five minutes of my time for rebuttal. This case involves the death of Emma Mitchell of COVID-19 during the early days of the pandemic while she was a resident at Wedgwood Nursing Home. I'd like to address the two primary reasons why this case belongs in federal court and why the District Court's remand order should be reversed. And that's first addressing the doctrine of complete preemption, and second, on the basis of federal officer jurisdiction. The first inquiry that we have presented to the Court is whether or not the PREP Act constitutes a complete preemption statute. We submit that it does. It's an extremely powerful statute that provides both an exclusive federal cause of action and an exclusive compensation fund that has already been funded by Congress to address these claims. This is exactly the rare type of statute that is a completely preemptive statute and forecloses state law claims that fall within its scope. We've set forth in our briefs how the PREP Act bears all the hallmarks of a complete preemption statute as reflected in its text and in its purpose. Some of their claims to me don't seem to be there to properly prepare the food or allowing people in without checking temperatures. It doesn't seem to me that every single state law claim has been specifically identified by the Secretary saying, this is part of this whole ball of wax. Well, Your Honor, I would say that the Secretary of State has taken a very comprehensive, the Secretary of Health and Human Services has taken a very comprehensive view of the scope of the statute and has gone so far as to delineate how program planners are defined under the statute as those who institute or implement infection control procedures intended to prevent the spread of COVID-19. So for example, screening or testing visitors, staff members, and residents has certainly been called out by the Secretary of HHS as falling within the statute. And to the extent that there are other claims, this is obviously something that needs to be looked at on a case-by-case basis and they are factually specific, but it does, the statute's language itself is extremely broad. It provides broad immunity from both suit and from liability. It covers a broad range of claims and it uses the very broad term, relating to, which is that... Well, that's my problem. Maybe I'm misunderstanding what you just said. You said each claim has to be looked at on a case-by-case basis and it's factually, I mean, to me that cuts against total preemption on its face of every state law negligence claim. Well, I think that we have the case before us, which is a case that involves a death because of COVID-19 and it alleges that that death occurred because of policies and procedures that the nursing home had. So I do believe that that on its own is sufficient to bring forth and the application of the PREP Act. And it also, you know, it supports a general rule that when you have allegations of a death by COVID-19 and allegations... Can you tell us where exactly it says just what you said? That if you simply allege policies and procedures caused a COVID death, that's preempted? Yes. Well, the complaint does contain those allegations. Those are in the record, but the statute itself talks about the... Well, it says specified by the... I don't remember. I'll have the language right in front of it. As specified by the secretary, where did the secretary broadly say any allegation about policies and procedures causing the death by COVID of a patient is preempted? Well, the secretary specifically said that with respect to nursing homes, and that's in the fourth amendment to the declaration and also in the advisory opinions of the Office of General Counsel, which the secretary has explicitly incorporated by reference into the declaration that he has submitted or issued with respect to these types of claims. There's been very specific and particular references to nursing homes and their efforts to stop the spread of COVID-19 and that they do fall within the PrEP Act itself. So it seems to me that the third circuit, at least, does not agree with the position you're arguing here. What, I guess my first question is, can you try to distinguish that and why we should not look at it as persuasive? And at any rate, my second question is, what case should we be looking at that might guide us to agree with your position? Thank you, Your Honor. Yes, the Maglioli decision out of the third circuit. First, I'd like to point out that it's not final yet. There is a petition for re-hearing en banc still pending before that court. Secondly, obviously this court's not bound by it and nor should it be persuaded by it for several reasons. We do agree that the Maglioli decision was not final. We do believe that the Maglioli decision did not go far enough because it for willful misconduct, didn't preempt all of plaintiff's claims. And the reasoning of that court was that the statutory remedy somehow has to be coextensive with the state law claims. And in our petition for re-hearing en banc, we've made the argument clear to the court that that is in direct contravention of Supreme Court decisions such as Aetna Health versus Davila and the Bush versus Lucas case, which says that we need to take a look at the careful balancing that Congress has engaged in in constructing this statute and has made policy – taken policy considerations into effect and has determined that this is the way this specific condition, this public health threat that has emerged. And so there may be in fact a situation where the state law remedies are not available or not compensable. But Congress is clearly engaged in a process of providing for a very generous, no-fault fund for making the claims that people who have been injured by or died of COVID feel can be made against that fund. And the Maglioli Court overlooks the relationship between the Federal Government and the nursing homes and the very specific application of this particular statute to the factual situations before it. So there is – there is significant deficiencies in terms of how far the court did go or did not go in looking at whether the statutory remedies exactly match up with the state court remedies. And the Supreme Court has clearly said that that is not required. And in fact sometimes some of these statutes that are completely preemptive – and I believe this court is – the Texas District Courts have addressed the CSRA where that statute doesn't even provide a remedy for – in court at all and have found that to be preemptive of any of these claims. I'm sorry, but I forgot your second question. Well, the second question is, what case do you think would be persuasive in guiding us to reach a contrary result? Yes. Thank you, Your Honor, for reminding me. There are no – this is pretty much an issue of first impression in these courts. So there's no published circuit court authority that necessarily would provide significant guidance. However, I think that you can gain significant guidance from the Supreme Court decisions that have addressed these types of statutes and the underlying rationale for why they should be considered preemptive, such as the Davila case and the Aetna case and a couple of other cases that we have cited in our – particularly in our reply brief that should guide this court in looking at the complete preemptive nature of this statute. One of the things that comes up a lot in these cases is the question of the scope of the statute, and that has been raised in this case by the appellees, and whether or not it applies to this particular conduct. The complaint alleges that Wedgwood was engaged as a program planner in administering a program about the use and administration of covered countermeasures. And implicit in an infection control program is the use or nonuse, as may be alleged, of protective equipment such as PPE, gowns, masks, face masks, gloves, et cetera, and protective policies and procedures such as testing, which is also considered a covered countermeasure under the Act. So the – the implication that just because the complaint does not state on its face that – that a covered countermeasure was used or not used is incorrect. And, in fact, the Secretary has specifically said, and through the – his Office of Administrative Counsel, that the – the implementation and maintenance and administration of programs such as infection control programs are the items have – are being used properly or how they're to be used is actually very much at the center of this statute. And if that is not – if that is ignored in a particular case because it doesn't involve the direct use or administration of a covered countermeasure, that would be reading out of the statute a significant portion of the statute relating to program planners, which are, by congressional statement, included within the scope of the PREP Act. I'd also like to turn to federal officer jurisdiction, if I may. And under the Watson Acting Under Test, we qualify as a federal officer under the federal officer jurisdictional statute. We're not just arguing that we're a regulated industry or even a highly regulated industry. And we're not just arguing that we are a member of the critical infrastructure, and, therefore, that seals the deal. What we are saying is that we have a lot more than that in our particular industry. Beyond the PREP Act that your client claims to be doing at the direction of the government, I mean, is there any contractual relationship or anything else other than the PREP Act that your client is doing, maybe not against its will, but at least doing with some specificity of direction? Well, we have extensive CMS and CDC guidance, instruction, direction that under the Watson test is specified as being sufficient to warrant federal officer jurisdiction. We are fulfilling a federal function, which the CMS has said, it is our responsibility to protect the health and safety of this particular population, this vulnerable population in congregate living situations. And CMS has said, we need your help, private entities, in doing that. And CMS has set forth the ways in which it wants us to do that. And it's not just ordinary standards of care for infection control. It went to the very center of the operations of the facility and the clinical decisions that were being made. And it was crucial to all of those decisions that these entities follow the federal directives and guidelines and instructions and assist the federal government in performing a public function, which is to protect the public health in a time of a public health emergency. To your knowledge, as we sit here or stand here, as the case may be today, to your knowledge, has there been a, I take it there's not a circuit court, but is there a district court opinion that you can cite us to that believes or that has found that federal officer jurisdiction existed based upon the arguments you're making today? Or is this entirely case of first impression for all of us? I'm afraid that a particular case is not coming to my mind, but I'd be happy to present a case. In general, it is a case of first impression, and this is an evolving area of law. The Bolzhik case in the Tyson involving meatpacking industries rejected federal officer jurisdiction, but for reasons that do not apply in our situation, because we are performing a federal public health function, and we were subjected to very direct and specific directives that were in place. I'm going to reserve the rest of my time for rebuttal. Thank you. Good morning, your honors. May it please the court. Fifteen district courts in this circuit alone have rejected the nursing home's identical arguments that federal jurisdiction is appropriate under the PREP Act. Federal removal jurisdiction is not appropriate, one, because there is not complete preemption, and two, because federal officer removal is also unavailable to the nursing homes. In this particular case, I think it's important to note the purpose of the statute. The purpose of the PREP Act was to create immunity, to encourage private entities to create countermeasures so that they were not concerned about liability, so that we could hurry and create certain measures, countermeasures, that could help us through the crisis back in 2005 and now again when we're discussing COVID-19. It absolutely does not so usurp state law as to completely convert state law claims into federal claims. The specific case that I feel on the issue of complete preemption that's helpful is your case in Aaron v. National Fire Insurance. I believe that this court did an excellent job interpreting all of the cases that allow for complete preemption. Aaron v. National Union Fire Insurance involves a Longshore and Harbor Workers' Compensation Act claim where a worker was injured on a job site, and there were certain benefits that were offered to survivors, and the employers removed that case to federal court, and this court held that there was not sufficient grounds, that there was not complete preemption to allow for removal in that specific context. First, there was not a federal cause of action that was created that allowed for recovery of the plaintiffs by the state law claims. In that case, I think that it's interesting because there, there were intentional torts that were not, that did not fall within the statute that was analyzed there. Here, the Pelley's, or the nursing home Wedgwood, has claimed that this particular statute would create removal jurisdiction because of the certain circumstances where a program planner, the nursing home is a program planner and they're carrying out certain policies and procedures regarding infection control. That's simply contrary to what the statute says. The statute is clear and repeatedly, over and over again, talks about the administration to or use by an individual of a covered countermeasure, and requires that that covered in Mr. Mitchell's complaint for the death of his mother, that a countermeasure caused injury to his mother. Now, there may be certain circumstances where a countermeasure causes injury to someone, and it would fall within the PREP Act, but here, the allegations by Mr. Mitchell involve neglecting Emma Mitchell to a certain degree that she was exposed to COVID, failing to provide appropriate supervision and training to staff that were caring for her, and failing to provide proper medical and nursing care reasonably required for plaintiff's medical conditions. So, a covered countermeasure doesn't even appear, not once, in the complaint. So, to get us to complete preemption, there has to be something more. There has to be some sort of intent by explicit intent by Congress that this is such an important area that we're basically converting all of a plaintiff's state law causes of action to federal causes of action, and that is just not available in this particular case. I wanted to address counsel's argument as to a program planner and performing certain duties and how those may fall within the PREP Act, and specifically, Advisory Opinion 20-04. That is the specific opinion that addresses that issue, and on page three of that opinion, it says what the function of a program planner is. A program planner performs certain functions, including supervising or administering a program with respect to administration, dispensing, distribution, provision, or use of a security countermeasure. So, we're talking about using a countermeasure or administering a countermeasure. There is absolutely nothing in the statute that says anything about non-use of a countermeasure. So, while the appellant tries to somehow fit these claims within the PREP Act, they do not fall within the PREP Act. When it comes to federal officer removal, in the Watson case involving Philip Morris, of course, this is a very highly regulated area, and the appellant argues that since nursing homes are highly regulated, then that should fall within Watson federal officer removal analysis. In this particular case, the only guides that we have to look to where there are certain, I mean, they are actually just guidelines. The CDC and CMS have issued certain guidelines. An example is in February, on February 6, 2020, CMS strongly urged the review of CDC guidelines to implement those guidelines to prevent the spread of infection in nursing homes. The CDC also offered a series of strategy or options to optimize certain supplies to help prevent the spread of infection in nursing homes. And in this particular case, there is just not any intent under the statute to show that the government or the Congress has intended that nursing homes are assisting in carrying out certain duties by the federal government. Classic examples of federal officer removal include government contractors, where the government has hired a specific private entity to actually carry out and manufacture a product that it needs. Another example that Watson described or discussed was a public defender's office. A public defender has to be specifically organized under certain codes of conduct. There are certain regulations that must be followed. It's funded, and any non-use of those funds have to be returned. This is just not the case here. This is a private entity, a nursing home is a private entity, that is not carrying out anything other than a private enterprise, a private for-profit enterprise to care for our elderly. And if they're carrying out a private for-cause enterprise, they have to follow the law. They have to make sure that they are taking steps to protect against negligence. Just because an entity happens to follow certain regulations and guidelines, that does not mean that they are immune from liability. If anything, the defendant may, which I don't believe that they can, but if anything, the defendant may argue that it's immune in state court law, but it's certainly not a basis for federal jurisdiction removal in this particular case. If you don't have any other questions, or any questions, no? Thank you. We'd ask that the district court's decision be upheld, in this case be remanded to state court. Thank you. On the issue of complete preemption, I would like to direct the Court's attention to its decision in the Elam case, which is cited in our briefs. And in that case, it found that the statute in question was a completely preemptive statute for reasons that I believe equally apply here. First, it preempted state law, and as we've seen, the PREP Act clearly does that, and expressly. Secondly, it created that the statute in Elam created an exclusive federal remedy, which we have here, both a federal cause of action and a federal fund for compensating all other claims. And the statute sets forth the policies and procedures for those claims, which the PREP Act also does very carefully in describing how the claims are to be handled. I think the U.S. Chamber of Commerce amicus brief does a very good job of pointing out the consequences and repercussions of allowing these liability cases to proceed in state court, both in terms of the scope and the consequences of those decisions on the jurisdictional analysis here. The allowing disparate state courts to make determinations about the application of the PREP Act as a complete preemption statute is contrary to what Congress clearly intended. Congress set forth a very strong and powerful statute that intended to encompass all of these types of claims. I'd also like to address that the issue about program planners being covered under the statute, the discussion given here today by my colleague ignores the fact that it's not just administration to or use by, but the statute specifically says or administration of a program that involves those kinds of measures. So we cannot, and that's in subsection lowercase i8, and we cannot ignore that the statute does cover those program planning activities as part of its coverage. And at the very least, Your Honors, I would suggest that if there's any doubt about whether the allegations of this complaint or petition, which is under notice pleading requirements in Texas, covers or addresses these types of claims of use of covered countermeasures, that we ought to be at least allowed to conduct jurisdictional discovery before that determination is made at this early stage of the case. And there have been cases that have allowed that. For example, in the Rochelle case, the court did say, let's have jurisdictional discovery to see what these claims are really about. And that would be appropriate to maintaining a balance of allowing the defendant's immunity from suit as well as liability, while at the same time not being unfair to the plaintiffs and having to flush out their claims a little bit. And then on the question of federal officer jurisdiction, I would first want to point out, these were not just guidelines that were being directed at these nursing homes. These were directives and instructions at the most minute detail about what they should be doing. And it's not a requirement, an absolute requirement, that they be a directive. The Watson test for federal officer jurisdiction much more broadly talks about instruction. It talks about guidelines. It talks about directives. There are a number of ways in which it interprets the application of the federal officer statute or jurisdictional statute. The job of these entities is to protect the public health in its population. And what is important here is that the federal government knew it could not do this alone. It could not address the pandemic alone. In some circumstances, the federal government did send in the National Guard or replace private actors with other companies to address these situations, but it necessarily enlisted the assistance and help of these nursing homes in addressing what is the federal government's specifically articulated function and duty, which was to protect the health of these populations from the spread of COVID-19. Unless the court has any other questions, I thank you for your time today. That will conclude the arguments for today. The cases that we've heard are under advisement. Thank you for your consideration.